Good morning, Your Honor. This is Brent Brocker on behalf of Office Depot, the appellant. Yes. I'd like to reserve five minutes for rebuttal. Thank you. To begin, thank you for hearing this important case for Office Depot and, indeed, for all commercial purchasers of insurance. We're here because the district court below granted AIG's motion for summary judgment, finding no duty to defend, and denied Office Depot's motion for summary judgment on the same issue. Applying a de novo review, this court, we believe, should reverse that decision and enter summary judgment in favor of Office Depot. We don't have summary judgment that we can reverse. Thank you. Did Office Depot move for summary judgment? We did, Your Honor. We did. There are cross motions for summary judgment. Cross motions for summary judgment, correct. Now, this is the second appeal from a summary judgment ruling in favor of AIG in this case. In the first, the district court ruled that California Insurance Code Section 533, which prohibits the insurance of intentional conduct, defeated Office Depot's claims. In doing so, the district court reasoned that only intentional conduct was alleged in the Sherwin pleadings. A prior panel of this court reversed, reasoning that the district court had read the Sherwin claims too narrowly and concluded that Office Depot actually faced potential liability for non-intentional conduct. It thus remanded the case to the district court to consider the substantive coverage arguments that we're here for now in the first instance. Office Depot respectfully submits that AIG and the district court have overreached again by not properly analyzing the insurance policy and the broad scope of the allegations in the Sherwin suit. When the pleadings and the insurance policy are properly analyzed, Office Depot was owed a defense in Sherwin. Given AIG's inability to contest the undisputed evidence leading to the settlement of the case, which AIG also refused to participate in the settlement, it also owed Office Depot a duty to indemnify. Office Depot is seeking summary judgment with respect to both the duty to defend and the duty to indemnify. With respect to this case, I want to start by emphasizing that there's really no genuine dispute here that the coverage grant in the AIG policies has been triggered. In other words, setting aside the timing of the alleged... I thought there was a whole argument at the end of the brief by AIG that the coverage wasn't covered. AIG does contest that. That's correct. It's not uncontested. Let's go on from there. Fair enough. The district court rejected that argument. And so what the district court ruled was that the quote unquote wrongful acts first occurred before the policy period, and therefore there was no potential for coverage. What would be most helpful to me is I understand that the core of your disagreement with the district court was that he looked at all of the acts alleged in the Sherwin litigation rather than the subset that were covered by the multimedia module here. And you say, and that's what I'd like to hear, that the only ones that are wrongful acts for current purposes are the ones that meet the multimedia criteria and that those did not start occurring until the policy period. Is that basically your argument? That seems to me to be the argument that was least covered by the district court opinion because it's not covered at all. So I'd like to hear specifically why you think that the complaint, even if it has wrongful acts, both as to the exclusion as to the coverage question, even if they were wrongful acts of the same kind that continued from before the period, they were not wrongful. They were they were alleged in the complaint, but they weren't wrongful acts for purposes of the insurance policy. Right. That's that's right, Your Honor. And and the critical point here is the specific language in the wrongful act definition. A wrongful act under this policy only occurs solely in the use or distribution, et cetera, of materials. And what the district court did is the district court concluded that because the Sherwin allegations spanned a period of time before the policy, irrespective of any analysis as to whether the quote unquote wrongful acts, the subset of acts covered by this policy occurred. It concluded that because wrongful acts may have occurred prior to the policy, there could never be coverage here. And the thing that I think is is critically important here is the specific language of the wrongful act or excuse me, the prior exclusion. The prior acts exclusion issue here precludes coverage for a claim alleging arising out of that for any wrongful act related wrong acts. There is a continuous or repeated where the first such wrongful act occurred prior to inception of the policy. So policy in which I have a question. Can you hear me? Yes, I can. I have a I have a question about that. Did the court ever make a finding as to when the first wrongful acts occurred? It did not, Your Honor. It did not. Well, I did make this distinction. I said it made findings as to when the first acts that were alleged to be wrongful in the Sherwin litigation occurred, but it didn't focus on this distinction. That's correct. When you look at the district court's order, it focuses on when quote unquote wrongful conduct began as opposed to focusing specifically on what this particular policy is designed to cover. And as you correctly answer my question, which I gave you all of the predicates and I wanted to know what what are the first wrongful acts covered by this policy and when did they occur? OK, so yes, Your Honor. So in the complaint, we point out in our briefing that the very first occasion in which quote unquote materials is referenced in the complaint occurred after inception of the policies in the summer of 2007. That was with respect to the the so-called switch to option to allegations. In addition, with respect to the claims that these these parties were were entitled to best government pricing, the allegations there examined purchases after March of 2007 when the policy incepted. With respect to other categories of alleged misconduct, change in list price and discontinued product exceptions, discontinued product allegations, the argument was that the the use of materials, catalogs, etc., that those those initiatives did not become major initiatives until the end of 2007. And then there are other allegations against Office Depot, the nondisclosure of costs allegations where really no discussion of materials one way or the other is present. And so under those circumstances where you have a situation in which the potential for coverage cannot be eliminated based on undisputed evidence, AIG owed a duty to defend. So, you know, our our our position is that the allegation not only do the allegations of the complaint not allow AIG to eliminate the potential for coverage, the only materials referenced in the complaint were referenced in the timeframe after March of 2007. Now, rather than focus on the specific definition of wrongful acts and and the use of materials, AIG relies on things like a statute of limitation defense and and the way Office Depot characterized the Sherwin case sometimes in its filings while defending. It even points to the release language in the settlement agreement, arguing that that the misconduct must have occurred prior to these policies. But those statements are irrelevant. The duty to defend is judged at the time of the tender, not in hindsight, based on litigation positions. But more importantly, none of those defenses or positions in Sherwin were directed specifically at the use of materials and and there certainly were never was never an adjudication related to when materials first began to be used. And so what you have is just because there are a bunch of other exclusions. And I think, yes, I was in particular about the fraud exclusion. What about that? Sure. So the fraud exclusion, Your Honor, we think is is very easily dispensed with when you consider the first appeal in this case. I mean, in the first appeal, the district court ruled that the California that the Sherwin allegations were exclusively intentional and therefore were barred by insurance code section 533. The prior panel here in the Ninth Circuit rejected that, remanded the case and concluded that because the California False Claims Act claims allow recovery for recklessness or reckless misconduct, Office Depot at least face the potential for that liability in the plea. The question is, what about the complaints to the complaints alleged liability, the underlying complaints or non-intentional? They do, Your Honor. They do. They do both in the sense that, you know, first of all, they're pleading False Claims Act. No, I'm not talking about the complaint. Yeah. Oh, I see. Go ahead. Yeah, they plead False Claims Act causes of action for which recovery can be based on recklessness. In addition, the fraud counts themselves contain the word recklessness in them. The other the other important argument with respect to the fraud exclusion is that it it applies to a narrow category. If I've got this correct, a narrow category of officers and directors at Office Depot only so that lower level employees who may have even engaged in this conduct are not covered by that exclusion. And in the Sherwin pleadings, you had allegations of, you know, vague allegations of employees engaging in this managers. There were vicarious liability allegations. So all. But I will say that that was very thoroughly briefed in connection with the first appeal and the court's conclusion that non-intentional conduct. Contract exclusion. Contract exclusion. Would could Los Angeles County have sued Office Depot if they had never entered into the master agreement? Could they have sued Office Depot if they. Well, as. Yes. Yes. They could have sued them under the California False Claims Act, as they did, irrespective of any breach of contract. It's not irrespective of any breach of contract. It's irrespective of the contract. Right. Isn't that standard? Well, the the the intervenors in the case brought claims for both. The CFC violations, as well as breach of contract violations and fraud allegations. And so that's fraud violations. And so that that is a really important point. I mean, even the intervenors that came in and pursued those claims understood that they might not be successful in breach of contract. But what does the contract exclusion say, even with the agenda that, you know, what does it say? It says the exclusion excludes claims arising out of etc. Liability or obligation under any contract or agreement or out of breach of contract. However, it does not apply to liability or obligation an insured would have in the absence of such contract or agreement. I mean, the exclusion does not say that this exclusion applies unless a contract is totally absent from the case. I mean, this is an exclusion where the clawback focuses specifically on liability or obligations that Office Depot would have in the absence of a contract. And that's exactly what what was presented first by Sherwin. I mean, Sherwin didn't sue for breach of contract. And we've cited the law that essentially says false claims act claims have different elements and a different makeup than a breach of contract claim. And then when the intervenors came in, not only did they sue for breach of contract, they sued. They brought other extra contractual claims. And so, you know, AIG obviously wants to wants to read that clawback language very narrowly. But, you know, again, it's not an exclusion that excludes all claims where the parties, for example, came together by virtue of a contract. It's more specific than that. It addresses liability or obligations in the absence of such contract or agreement. And here, those obligations were present with respect to the False Claims Act claims, as well as even arguably the fraud claims. I'm I've been going for almost 15 minutes. I'm happy to just about out of time. I'll give you a minute or so. Thank you very much. Thank you, Mr. Sasson. It pleased the court. My name is Gary Sasson and I represent the Apogee AIG. AIG wrote the policy issue in March 2007 is a very special kind of insurance product called a medium module. And it has no application to a case like this. The district court didn't reject that argument. It just didn't reach it. This is a contract dispute with government purchasers. Office Depot says, despite the fact that AIG wrote this policy in March 2007, somehow AIG is obligated to ensure a key tam action alleging that Office Depot cheated California taxpayers dating way back to 2001 by knowingly violating contracts with state and local government agencies. The district court appropriately granted summary judgment on each of those grounds, which are independent and sufficient. And we've heard a lot about wrongful acts. What are they? Well, they're defined in the media module as harm caused solely through the creation or publication of materials. Well, what materials? Well, Office Depot says in its brief at pages 1 and 7 and 28, 29, that these materials involve catalogs, list price, sales sheets, sales materials, internet sites, and products lists. These are the bread and butter of a retail operations commercial transactions with all customers all the time. The complaint nowhere alleges that the mere publication or creation of any of these materials cause harm. All liability in this case stems from knowing violation of contract pricing guarantees. The use of these materials described and alleged in the complaint are incidental to effectuating or violating the contract price guarantees. Now, when does Office Depot contend this occurred? Well, this is critical because of the prior act feature of this policy. It ensures wrongful acts only if they first occur during the policy period. And as Office Depot acknowledged, there's an exclusion that says the policy shall not cover any claim alleging any wrongful act, related wrongful acts, or series of continuous or repeated wrongful acts where the first such wrongful act first occurs prior to the inception of the policy period. Now, at page 19 of its opening brief, Office Depot concedes coverage must be decided based on the complaint at the time of tender compared to the policy language. Yet, in their briefs, they rely extensively on what happened in the Sherwin litigation after it was litigated. That's all legally immaterial. They also concede in their brief and today that the complaint in the Sherwin case alleged wrongful conduct from the start of the 2001 master agreement. There were two master agreements being sued upon. One started and stopped before the policy. I understand you have a separate coverage argument, but leaving that out with regard to the multimedia module and the fact that the wrongful acts have to relate to something involving the use of media, the district court never did focus on that distinction between wrongful conduct alleged in the Sherwin litigation and what was covered by the policy. That's correct. So, I ask you, as I asked your opponent, focusing, and you agree that that distinction applies. In fact, it's only wrongful acts for purposes of the prior acts coverage and exclusion. Yes, you're right. Wrongful acts as covered by the agreement, by the policy. Yes, you're right. What do you think, what would you argue are the wrongful acts prior to the period, the coverage period? The complaint is replete with those allegations, Your Honor. What Office Depot has done is it's now cherry-picked certain allegations in the complaint after 2007. I'd like to know which are the ones. Okay. They refer to the practice called switching from Option 1 to Option 2, which is described in Paragraph 68 to 71. Tell me what you think are the allegations in the complaint. This is one of them. They say it started after 2007. What the complaint says, Paragraph 68, beginning in 2006, Office Depot created Option 2. Paragraph 71 says they did it because agencies were coming to them saying, you've been ripping us off from 2001 through 2006. You haven't been honoring the best price guarantee. That's prior to 2007. Using materials, catalog pricing. So they created another option, discount from the website. And then the complaint goes on to say in Paragraph 72, Senior Management recognized early on that Option 2 was going to cost the customers more. So in late 2006, Top Management directed the sales people to switch the agencies from Option 1 to Option 2. From then on, it was required. And they had to keep track. What were involved in that? Catalogs. Catalogs and website pricing. According to Office Depot, those are sufficient materials. And the complaint says that that began in 2006. Option 1 was the pricing regime that prevailed from 2001 through 2006. And all this is spelled out in Paragraphs 24, 28, and 42 in the complaint, which explains that the agencies were put on discounts on published list prices from the inception, 2001, materials. Discount off of catalog prices, materials. A discount off of manufacturer's catalogs and the manufacturer's suggested list price, materials. Discount off of Office Depot's own wholesale catalog for proprietary products, materials. Discounts off of their frequently ordered products catalogs, materials. Paragraph 42 of the complaint says from at least 2001, Office Depot knowingly violated its contract. And it lays out all the ways they did it, not applying manufacturing rebates to its list price, materials, thereby costing real parties to pay a higher price. The list price, the benchmarks, the catalog pricing, were supposed to be reliable benchmarks for providing the best price guarantees. But the complaint says it was all smoke and mirrors from the beginning. Office Depot increased its prices at any time. This whole argument dovetails with your argument that there's no coverage because it wasn't solely due to the media. No, no, Your Honor. These are all allegations that Office Depot says. I know. You are also arguing that the same language includes any coverage. Well, we suggest none of the allegations constitute wrongful acts, but that's a separate defense the district court didn't read. But I don't understand how it could be, both things could be true. That's what I want to know. Well, we're accepting their definition for purposes of the prior act exclusion. Because if none of these are wrongful acts, there's no coverage, period. But if they are right, that materials... Just a minute. Yes. How can none of them be wrongful acts if you're now going through a whole litany about how all of them did involve materials? Because none of these alleged wrongful acts caused harm through the creation or publication of the materials themselves. That's critical in the definition under the media module. But we're moving past that. Office Depot ignores that. And they say, well, these were used to perpetrate the contract violations, and they're wrongful acts that trigger coverage under the media module. We're accepting that for purposes of applying the prior act exclusion. If any of these are alleged wrongful acts, then all of them are, because they all involve the use of these catalogs, price lists, websites, Internet sites, best pricing, discounts, etc. Before this appeal, in fact, Office Depot argued the entire complaint alleged wrongful acts. In their motion for summary judgment at page 7, they argued that the use of bid sheets to promote sales to San Francisco and Berkeley were wrongful acts. The San Francisco bid was in 2004. The contract was 2005. The Berkeley contract was 2006. These all predated the policy. When they sought coverage, their global risk manager said the entire premise of the Sherwin case is based on alleged wrongful acts, drawing on the definition. Even in their brief in this case, they go back and forth. At pages 7, 8, and again at 23, they argue Sherwin's sole claim for relief included the core allegation that Office Depot used false records and statements, which also omitted material facts, in order to induce real parties to approve and pay false and fraudulent claims. OIG had a duty to defend based on these allegations alone, because the multimedia module specifically covers damages resulting from a wrongful act. They're citing count 1, which incorporates paragraphs 1 through 100, which are all the operative facts of the complaint. Until they got burned by the district court opinion on prior act, they were arguing the entire complaint alleged wrongful acts from 2001 forward. The prior act exclusion clearly applies. Their option 1, option 2, they focus on how it ramped up in 2007, but the exclusion says it applies to a series of continuing wrongful acts, and that's exactly that situation. Now, as far as arising out of contract, the policy says it shall... Yes, yes, Chuck. Are you referring to the key cam complaint? The key cam complaint, yes. But, I mean, isn't one way to read the complaint? They do mention the wholesale catalog, but they're talking about the price off the wholesale catalog. Yeah. So, a lot was perpetrated by a contract that included the wrong price, inflated price, but they didn't submit the catalog. Would that count as a wrongful act? Well, again, Your Honor, we're having to accept Office Depot's definition. The option 1, option 2 violation that they rely on, it involved a move from a discount off a wholesale catalog to a discount off of the commercial website pricing, which was available to consumers off the street. Those are the wrongful acts they allege, and that's the kind of pricing that prevailed from 2001 on. It was simply discounts from published list prices, and the problem was they kept shifting them around. In fact, the complaint alleges that from the beginning, the catalogs weren't stable, citing the master agreement starting in 2001, as well as the master agreement beginning in 2006. They were contractually limited to changing it no more than twice a year, but they were changing it daily from the beginning, from 2001. This all violated their contractual obligation and best price guarantee. The switch from option 1 to option 2 was qualitatively no different from any of the other allegations in the complaint. Office Depot likes it because it has some allegations concerning 2007 and 2008. That's why they've singled that out, but all of the allegations about wrongful acts are similar, involving a failure to give best price guarantees using the catalogs and price list that Office Depot concedes constitutes materials within the meaning of the definition of wrongful act. Now, to the contract exclusion, the policy says it shall not cover any claim alleging arising out of or resulting directly or indirectly from any liability or obligation under any contract or agreement, or out of any breach of contract. Office Depot relies on the clawback language, which says it does not apply if there be liability in the absence of such agreement or contract. This entire case would not exist in the absence of a contract. The Sherwin complaint was very straightforward. It had five Roman numerals. Introduction, parties, jurisdiction and venue, the USC contracts, and misconduct, paragraph 42, alleging contract violations. It's all predicated on contract violations. The settlement they want us to ensure is contract damages, $68 million plus fees. The motion to approve settlement at SER 279302 explains how the parties arrived at the settlement. Quote, during the litigation, the parties advanced three possible theoretical approaches to calculating damages. Plaintiffs contended the damages should be premised upon a comparison of actual USC contract pricing to a pricing model described in the San Francisco contract. Office Depot contended that the relevant comparison was between the USC contract pricing and the pricing it actually provided to San Francisco and its invoices. The plaintiffs explained in their motion that they settled the case based on the plaintiff's demand, discounted 89% for the risk of litigation. Contract pricing, contract damages. Finally, the district court relied on the agency exclusion. The policy says it shall not apply to any claim brought by or on behalf of any federal, state, or local government agency. That literally describes a TTAM action. It seems like a very strange use of language to call Los Angeles an agency. Well, the statutes define all of these agencies as agencies, and we've cited a number of statutes. That's irrelevant to this case. Well, if we're looking for a source of definition, that's one source, but there's another right under our noses, and that is the USC contract at issue in this case. Office Depot contends no layperson would construe agency to apply to these parties. Well, the USC contract, which is Exhibit 3 to the amended Sherwin complaint, refers to these contracting parties as agencies throughout. For example, contract says, U.S. community's contract is supplier's primary offering to state and local government agencies nationwide. The pricing is the lowest available pricing net to the buyer to state and local public agencies nationwide. Having lived under this contract for six years, they were clearly on notice when they took out this insurance policy that that exclusion would apply to these parties. We've briefed the other defenses, and our answer brief will rest on the briefing as to those. If there are no further questions, we'll submit our case at this time. Okay. Thank you very much. You speak very fast, but I understood it pretty well. Thank you. Your Honor, just very briefly, with respect to the, again, the switch to Option 2 allegations, this is really important. The issues here have to be analyzed in the context of duty to defend law in California, which requires AIG to eliminate the potential for coverage here. What that paragraph 76 is saying in the switch to Option 2 allegations is Office Depot began to use the annual release of its company's catalogs in the summer of 2007 in order to attempt to confuse potential purchasers as to what they were buying. This is a real question. How connected this, that, for example, has to be to other earlier wrongful acts like the use of priceless and so on, or do we view it separately? They're separate. I mean, there has to be the use of material in order for this policy. It has to be the same kind of material, even if there's sort of an allegation in the complaint of an overall scheme. Right. Which had wrongful acts, even in the narrow definition, before 2007 and others after 2007. It seems to me it's how connected they have to be. Well, you know, the policy specifically defines material to include publications, newspaper newsletters, magazines, books, brochures, directories, and then separately advertising content displayed on an Internet site. But is your argument that the wrongful act during the policy period has to involve the same kind of material as the wrongful acts before the policy period? Yes, in order for the exclusion to apply. That's what I'm asking you. In other words, if it was accomplished through a brochure during the policy period, but through a website before the policy period, does that count under the exclusion? Well, if it's identical material and it's identical conduct, then we'd have to agree that the exclusion applies. Material meaning content? What does it mean? It has to be the same material, which is defined as content in books, brochures, etc. Well, if you have the same thing in a brochure and on a website, then that's the same wrongful act or a prior act that counts. But if you have different material on the website and the brochure, even though they're both trying to accomplish the same end, i.e. switching or whatever, that's a different wrongful act. That's not part of a related wrongful act. Correct. And what I think is really significant here as well is when you look at the law, I mean, the only cases AIG has cited here are trademark infringement cases where there's just no dispute that the infringement occurred before the policy and continued thereafter. I mean, it's the same publication of material. It's the same book. It's the same slander, whatever it is. Here, again, applying California duty to defend law, and I really take issue with counsel's contention that we are cherry picking allegations. I mean, California duty to defend law says that if there is a remote sliver of an allegation buried anywhere in the complaint that might potentially give rise to coverage, then there's a duty to defend. And here AIG should have stepped up and defended Office Depot. So the last thing I'll say on these points is, you know, and this is what it is, I suppose, but AIG didn't even cite these exclusions for two years into the litigation. I mean, the case had already been mediated and was on a path to settlement before AIG cited the breach of contract exclusion or the prior acts exclusion to Office Depot. So I don't think they even believe that these applied. Now it's obviously convenient for them. Okay, your time is up and thank you both for arguing the case of Office Depot versus AIG Specialty Insurance Company is submitted and we are in recess. Thank you.
judges: Siler, Berzon, Lee